Okay, we'll call the next case. Number 16-2722, Javon Wright v. City of Wilmington. May I approach the podium? Mr. Norman. Thank you. Good morning, Judge Krause, Judge Shurica, Judge Fuentes. May it please the Court. I would like to request five minutes of rebuttal at the outset. Thank you, Your Honor. Your Honor, there was a question presented by email about the judge's order, and I'd like to read directly from the magistrate's recommendation. It states that plaintiffs may file within 30 days an amended complaint which conforms to the recommendations herein, i.e., denial of certification of class but allowance of individual plaintiffs 1983 claim. If you go through, and this was expressly adopted by the sitting judge, Judge Robinson, if you go through the recommendation, it's clear through the footnotes especially that the intent was to view class certification through the eyes of the amended complaint, expressly stated in numerous footnotes, footnote 5. How can you do that where there hasn't even been a motion yet to certify that class? This is a class certification based on a definition that has been superseded. Your Honor, the definitions of the class are for all effects and purposes the same. How can that be? One of our definitions relates to all persons who have been handcuffed, transported, searched, and imprisoned by the police department based only upon reasonable suspicion of a crime. The other definition is all persons taken into custody pursuant to the investigatory detention policy of the police department. And then on the next paragraph, I believe it mentions handcuffing, transport, in the next sentence of... That clause follows a which. That is, it appears to be simply defining what the investigatory definition, that the amended class definition actually requires not only... It covers not only persons taken into custody pursuant to the investigative detention policy, but also that it be shown for ascertainability purposes that each person had been handcuffed, transported, searched, and imprisoned, and that that had been done based only on reasonable suspicion. I think that's what the... It's not just the policy, Your Honor. We're working with a written policy called the two-hour arrest law. That's what Wilmington 6.1k directive states. There's also an investigatory detention practice as testified by their 30b6 deponent in sworn testimony, that they have this two-hour policy. They have this policy of arresting based on reasonable suspicion, and it's no harm, no foul as long as they're released in two hours. During that time period, they handcuff, they transport, they search, and they book an arrest. Two hours, when that comes up, if they release them, they're in line with state statute. Just clarify for me that the first definition is attacking the policy itself. Is that right? In other words, you're seeking restraints of that policy? We're seeking... Or declaratory relief. Declaratory relief that the policy is unconstitutional and a declaratory relief. That's your first class definition? Yeah, that 23b6, Your Honor. I thought that was the second. I thought that was the amended complaint that added the term policy. Am I incorrect? Your Honor, the second complaint is really... It was intended to make more clear what we intended in the first complaint. Sure. No, I understand that, but the term policy didn't appear in the first complaint. I don't have a pinpointed site, Your Honor, but I believe that it still was mentioned in there. No, it was not. It was all persons who have been handcuffed, transported, searched, and imprisoned by the Wilmington Police Department based only upon reasonable suspicion of a crime during the period, and it goes on to describe the period on which you ask the police department to be adjoined for enforcing policy accustomed of unlawful transporting as the relief that you were requesting. But the class, and this goes to what we need to evaluate if we can, for ascertainability purposes, appears in one case to be all persons who have been handcuffed, transported, searched, and imprisoned. In the other, simply all persons taken into custody pursuant to the, all caps, investigatory detention policy of the police department. Those appear on their face to be very different class definitions. Your Honor, except for the testimony, the practice itself was exactly as stated in the original complaint to handcuff, transport, search, and imprison. That's the policy, so it may not be the same thing. Is that also referred to as the individualized detention policy? It's, I don't think it's, it's investigatory detention, then there's a two-hour. I was going to correct it, investigatory detention. Yeah, they're one in the same. That's the policy that you are attacking. That's the practice. They basically look at their written policy, and their written policy. But what you're seeking in that regard is either a restraint or to enjoin the policy? Well, to basically say that it's unconstitutional, because it's on the standard of reasonable suspicion instead of the constitutionally required probable cause. But you want some sort of declaratory relief. Absolutely, Your Honor. You're not seeking damages with regard to that. Well, they're incidental to the declaratory relief and injunctive relief that we're seeking. Basically, by its terms, it's a two-hour detention statute. So the people, everybody in this class has been handcuffed, they've been transported, they've had their liberty taken away for two hours. That's incidental to... Are you suggesting that the amended class, you define the amended class to also require that whatever methodology we're looking to for ascertainability demonstrate not only that someone was taken into custody pursuant to the investigatory detention policy, but that that also allow a court to ascertain that the person was, in the conjunctive, handcuffed and transported and searched and imprisoned, and that all of that was done based only on reasonable suspicion? Yes, Your Honor. Those are all elements of the class that need to be found in the amended class definition in addition to having been taken into custody pursuant to the investigatory detention policy of the police department? Yes, Your Honor. Because... Now, how do you identify those class members as Judge Krause's? Well, we've had discovery go on because we have a Monell claim existing, and there's several hundred potential class members. It's not hard. It says, invest, detention. It says, ID. It says, two-hour, right in the log, and then there's no corresponding charges. How about persons who were taken into custody, who were even imprisoned, but weren't handcuffed, and therefore are outside the definition? How would you distinguish between those with any kind of reliable methodology and folks who were handcuffed? Well, I'd say then they're violating their policy. Their policy as testified under oath, or the practice, rather, of investigatory detention, is that they handcuff, transport, search, and book. That's what they've testified to. We have sworn testimony from the 30B6 opponent, James Gasquicky. So, if they're not following their own policy, I think that that's for them to assert. Which definition are we reviewing for ascertainability? The definition as of... I mean, the court upheld all three. The court has said, you set forth a written policy based on 6.10K. Sorry, I'm going back to the threshold question. We appear to have two different class definitions. The original complaint, the amended complaint. Let's assume, for purposes of this question, that we are not persuaded that they are, in fact, identical definitions. Which of those definitions are you asking us to review for ascertainability on this interlocutory appeal? Well, Your Honor, I think, clearly, what the magistrate judge did, which was adopted by the sitting judge, was that they took the amended complaint. They took the definition of the amended complaint, because that's all over her recommendations, which were adopted. I'm sorry. You didn't ask the second part, or answer the second part of Judge Krause's question. Is that the one you prefer? Is that the one you want us... I want the one that the court's going to rule favorably, by the way. No, I think that in fairness, that's what... I think maybe it's the amended complaint you want us to review. Well, that's the one the judge reviewed. And it's all over the footnotes in her recommendations that she's looking at the amended complaint. The magistrate judge, Your Honor, yes. Can we look together at Appendix 11, where the magistrate, in the discussion, opens up identifying the motion for class certification and what definition the magistrate is going to apply Rule 23 criteria and ascertainability toward. And the definition that's set forth there in full is the definition of all persons who have been handcuffed, transported, searched, and imprisoned by the Wilmington Police Department, based only upon reasonable suspicion. That's the definition of the original complaint. And the magistrate appears, on Appendix 11, to be quite explicit that that and only that is the definition under review. Your Honor, perhaps what you should have done is, you know, did not... the class certification perhaps should have been mooted. But we need to think that the court did something for a reason. And the reason here, and she did this looking at the amended complaint, as you can tell throughout her recommendations, was that she made an ultimate determination that case is going to go forward, but we're not going to certify the class. So in the amended complaint, all class allegations need to be taken out. That was her express direction. The district court agreed with the magistrate's evaluation as to the motion for class certification that the magistrate was addressing. And it therefore appears that the district court also thought it was addressing. I mean, you mentioned mootness. I mean, doesn't that raise a significant jurisdictional problem for us if we're being asked to render an advisory opinion as to a class on which, if we granted you relief, if we reversed and remanded, the next step would be that you would file a motion for class certification on which a magistrate and district court would then rule. And we might then be in the position of reviewing a future order as to that class, which that order has not yet been written. I think it has, Your Honor. I think if you look, it was really an omnibus hearing. We had nothing for almost two years, and then we went for a comprehensive hearing before the court, and they heard everything. They looked at the motion to dismiss the original complaint and the motion to amend, and they just said, okay, same standard, we're going to look at them together. It didn't really differentiate what they were doing. They were just trying to be efficient and address everything at a time. Well, let's focus on ascertainability because aren't there very different kinds of arguments that could be raised if the class is defined, as it seems on its face, as persons taken into custody pursuant to an investigatory detention policy? I mean, for example, under those circumstances, perhaps one might argue that a law that identified ID for investigatory detention provided objective or a reliable and administratively feasible methodology and doesn't require, on the face of that definition, legal determinations as to whether an arrest was made with reasonable suspicion or something more. The first definition is a very different one that requires a finding of reasonable suspicion. Aren't there very different arguments that could be raised as to those different definitions and arguments that the parties never had the opportunity to raise and the court never had the opportunity to address because there hasn't yet been a motion to certify filed for that class? Well, Your Honor, I think that the intake log and the turnkey log are just so inherently reliable here. Very easy. You look at one day and you see ID, invest, detent, two hour. Very clear, reliable criteria why these people were brought in here. There's been testimony from multiple officers what they do. What you're suggesting is that ID does not have a predicate offense? In other words, they're just taken in for investigation. They weren't picked up for some violation of the law? Absolutely, Your Honor, because if they did have probable cause for a crime, that's what they would put on this intake list as a reason why they were brought in. So ID to you just means that we are going to check you out, investigate what you're doing on the street at two o'clock in the morning. You didn't show ID, so we're going to take you in. Something like that? Well, based on sworn testimony, it's based on reasonable suspicion. They have enough to do a Terry stop. They can stop, they can pat down, make sure you have no weapons or drugs, and then they say you have two hours to do this. What the Wilmington policy is doing is they're thinking the state statute gives them the authority to actually arrest the people as long as they're released for two years. Is that the scenario that the magistrate judge had when the judge determined that the class was not ascertainable? She didn't look at the intake log. I mean, she upheld everything. The case goes on. But it's just the ascertainability is very clear in this intake log. It says ID. There's no indication of any kind of probable cause. The policy itself, the investigatory detention policy is, as testified by Wilmington's designated deponent, it is handcuff, transport, search, and arrest. That's what they testified to. So they've defined it. It's not how plaintiffs defining it. They have defined what an investigatory detention is. We're going to go a few minutes beyond your questions. Thank you, Your Honor. I'm going to finish off trains of thought here. Does your definition, is it intended to exclude that group that was addressed by the Supreme Court in Haseby, Florida, and Hibble v. 6th Judicial District? And Haseby, Florida, Your Honor, it rings a bell regarding... Well, specifically, the Supreme Court has held that arrests that are based on reasonable suspicion for a short period are constitutional where they're conducted in response to someone refusing to produce identification as long as there's an immediate need or relationship between the request for identification and the reasonable suspicion. So there are situations, in other words, that have been addressed by the Supreme Court for purposes of identification that arrests and detention for short periods based on reasonable suspicion are constitutional. When you, in your various definitions of the class here, talk about detention based only on reasonable suspicion, does that mean reasonable suspicion in those situations where someone has not refused to produce identification? Or do you mean based only on reasonable suspicion regardless of whether someone has refused to produce identification or not? In other words, the definition of the class may or may not address unconstitutional activity. Well, Your Honor, I think just like in Stinson, the court reserves the capability to address specific issues where there is probable cause, whether there's some other legal justification for the detention. I mean, safety issues, you know, for instance, if there's... We're not talking about probable cause. We're talking about extensions of Terry stops, detentions for short periods where someone has refused to produce identification. Well, I think if there's a justification for a Terry stop and somebody doesn't allow the police officer to do what they're allowed to do under the Constitution, that then transforms into an actual arrest where there would be probable cause to detain that person for the crime of failing to provide identification. You have several named plaintiffs. Were any of them detained because they failed to provide identification? Not according to the incident report, Your Honor. The name... There's four of the named defendants, I mean, plaintiffs. You can see on the logs, it says either investigatory detention, two hour, or nothing. So according to this intake log, they've got the mark that leads us to believe that they're applicable or correct class representatives. We have that. We have that now. Counsel, the district court here addressed in a footnote the 23B2 class, that aspect of the motion for class certifications to declaratory injunctive relief and denied it, just addressed all other objections as mooted by her finding on ascertainability. That's simply manifest legal error, isn't it, under our case law? Your Honor... In other words, there is an ascertainability requirement for a B2 class, correct? That's part of the 23A requirements. And it's the Third Circuit... It's not even a 23A. It's part of what the Third Circuit reads into it. New York and Stinson mentioned that ascertainability. It's not a very high standard. We have... No, we decided in the Shelton case that B2, in the B2 class, there is no ascertainability requirement. Yes, Your Honor, my mistake. So given that the district court made that error of law and never addressed the issues around B2 class certification, isn't a remand required in any event at which point the district court perhaps could go forward with the admitted complaint and a motion to certify that is not a motion that has been mooted? Well, I don't... I believe that the district court, maybe in the recommendations, they mentioned the 23B2. I don't believe that the district court actually brought that up in their opinion. But there were a lot of things that the recommendations had. I mean, they found there was no numerosity. We now know there's at least a couple hundred. There's no... They said no ascertainability. They didn't address typicality. Well, I want to hear from you again on rebuttal. Thank you. Great. Great, Your Honor. Thank you. Good afternoon, Your Honors. Malcolm Cochran for the City of Wilmington. The appellee... I would like to begin, if I may, may it please the Court, with the January 20 letter and the threshold issue regarding the class definition. I would... Your Honor has the point and hopefully suggested the point in the Court's letter. I would in candor note that in our brief we didn't see a material difference between those class definitions. Upon reflection and considering the Court's letter and considering the two side by side carefully, there are material differences in those two class definitions, as was the subject of Your Honor's exchange with counsel for the and that is that the class members would need to have been, to have been, those two words, have been handcuffed, transported, searched, and imprisoned. There is no reference to the so-called investigatory detention policy. Wilmington doesn't have a policy by that name. That's a name that the plaintiffs have attached to their theory. Oh, it appears in the law. I'm sorry, Your Honor. It appears in the police law, the initials I.D. Right. I.D. At least the law that I looked at. Right. I.D. is what discovery will show. The Wilmington police turnkey puts in the log when a person is released without charge, without charges being placed. And there are lots of reasons subjects are released without charges being placed, having nothing to do with the with probable cause, and released without charges in circumstances where they are used as informants, for example, or where police wish to obtain more evidence before making a charging decision. But does it or does it not mean... I'm sorry, Your Honor. Does it or does it not mean investigatory detention? Um, we don't have a record on it. The practice is not uniform as we've seen it. Some turnkeys write I.D., some turnkeys write invest D-10, some turnkeys write two-hour. As best we can determine, again, there's not a record on it, but it's a reference to the state statute that my colleague mentioned a moment ago. Now, that is, in Delaware, there's a statute, 11 Delaware Code 1902, that precludes a police agency from holding someone for any reason for longer than two hours without placing charges. So people are brought in, a good example is one of the plaintiffs in this case, Mr. Murray. Let me ask you this. Aside from the legality of the practice, is there any question but that the class plaintiffs in this case were bringing a challenge to that policy? There is a question. The only definition under which they moved was the definition in the original complaint. Docket item three is the motion for class certification, and that doesn't refer to an investigatory detention policy. It refers to a practice of handcuffing, searching, transporting, and imprisoning, all conjunctive. It wasn't until we saw the first amended complaint that, for the first time, the words investigatory detention policy appeared. It was a matter before the magistrate judge when she made her... It was, Your Honor, and she... Well, let me... She referenced the amended complaint in her order. She did. She did. She stated, for the purpose of this court's class certification analysis, the court will consider the allegations in the proposed amended complaint regarding Griffin et al. She also relied on the amended complaint in her discussion as to whether plaintiffs primarily sought injunctive relief or would not be futile for failure to state a claim. She recommended that the court grant the motion to amend the complaint as to the policy, customer practice, and failure to train claims. So... Correct. But the fact is she was looking at the original complaint. Correct. She had two motions before her, Your Honor, essentially. Actually, four, a total of under the original complaint. That motion was filed... It's docket item three on the docket. It was filed shortly after the original complaint was filed. We moved to dismiss the original complaint, and then the plaintiff filed the second motion, which was the motion to amend. We moved to stay discovery, pending disposition of the motion to dismiss and the motion to amend, and the plaintiff's move to compel. Now, all of those motions were before her in the context of this magistrate's decision. Now, that's now before you. What should she have done? I'm sorry, Your Honor? What would have been the right way? Procedurally, she wanted to grant, even though we took the position that the motion to amend was futile, she determined it was not. So what should have happened here in retrospect is that she granted the motion to amend. The amended complaint was filed after she had denied certification on the original class definition. A new motion to certify the class under the new class definition should have been filed, and then we would have litigated those issues, which are different, as Judge Krause has indicated, than the ones that are presented by the original class definition. Procedurally, that's what should have happened, and it didn't, and it didn't. And so, respectfully, Your Honors, what you have here is a case that's not ready for you, an appeal that's not ready for you. Do you have a position on the Lyons standing issue that we also addressed? Yes. There's not standing here for B-2 class under Lyons. Lyons was the Chokol case in which the United States Supreme Court held that in a 5-4, I think it was, 5-4 decision, but it's good law, held that allegations of future harm will not support a claim for injunctive relief unless they are real allegations of future harm. The allegations here are very similar to those in Lyons. Plaintiffs do not contend that they have been repeatedly subjected to this invest-to-ten policy. They speculate that there is a threat that they may be subjected to it at some point in the future under Lyons. That's insufficient to confer Article III standing for prospective relief like an injunction. And also in Lyons, the United States Supreme Court addressed the declaratory relief that was sought there. On page 104 of the Lyons decision, they cite a case called Zwickler, which held that declaratory relief of the sort sought in Lyons and sought here, which is intended to protect other class members from future conduct, also doesn't state the actual controversy requirement necessary for declaratory claim. And so they essentially, I think it's dicta because it was only up on the injunction, but they did say that the declaratory claim wouldn't survive either, that same standing analysis. When is the time or what stage in the proceeding is this issue to be raised by you? It goes to the jurisdiction of the court. It's a subject matter jurisdiction issue. And it has nothing to do with ascertainability. I'm sorry, Your Honor? It has nothing to do with ascertainability. It has nothing to do with ascertainability. It's a jurisdiction of the court. It can be raised at any time, either by the parties or it's just Plante. When you say the case is not ready for you, as you said before, Mr. Cochran, is that correct? I apologize, Your Honor. I'm having difficulty hearing. When you said this case is not ready for you, did you mean that the case should be returned and published? It pains me somewhat to say it because I think we have very good arguments on the merits of ascertainability and all the elements of the class action. But the court's letter of January 20 identified defects that go to this court's jurisdiction and I think also to the jurisdiction of the lower court with regard to the B-2 claim. At this point, there was a motion in the beginning of the case to certify a class under the original class definition. That was the motion that was before the court. That was the motion that was briefed and argued by the parties. There was no subsequent motion to certify the class under the amended class definition. And so at this point, any opinion this court might issue would be advisory, at least. And I heard, and I was listening carefully for this, I heard the plaintiff say today that they intend to proceed on the new class definition. I should in candor also note for the court, we did a little research over the weekend, there is a case called Wiesfeld v. Sun Chemical, 84 Fed Appendix 257, which says that the district court is not bound by the class definition proposed in the complaint. Plainly says that in candor. But the plaintiff here has said today they plan to proceed on the new class definition under Rule 15. The new class definition in the amended complaint supersedes the old class definition. It appears that the plaintiff has abandoned the old class definition. There has been no motion presented to the district court except under the old class definition. And so at this point, any opinion at this level would be advisory. On an issue that Judge Krause raised with your opponent. Yes, Your Honor. Whether ascertainability applies to the B-2 class. Does not. Shelton, this court eliminated that. Clearly, if it existed, it may not have existed before. So this court clearly said that ascertainability is not an element with respect to B-2 class in Shelton.  Can you start out addressing the Lyons issue? Yes, Your Honor. You know, review of the Lyons. I mean, Lyons, you know, easy cases make bad case law. I mean, this individual was arguing that the whole entire city of Los Angeles had a policy of putting choke holds on everybody that they pulled over for traffic stops. Just wasn't very credible. So really, speculative damage is that it would ever happen again is where Lyons focused on. Unlike Lyons, in this case, if you look at these intake logs, just the small sample we have from two days, you see three potential entries on there out of about 20 or 30 people that have been arrested. We're talking about 10 percent of people in Wilmington are taking in under this investigatory detention policy. Plaintiffs, I got to say it, they have records. Did you say 10 percent of all the people? Roughly 10 percent from the small sample we have. Now, I don't know. You know, in fairness, we've gotten more information. We've gotten some logs later on. And like I said, we have hundreds of people over the small sampling we have that appear to have been taken in under this. Probably wouldn't be 10 percent, but it's certainly not less than a percentage or so. Just to be clear, when you say under this, you make the allegations in paragraphs 30, 43 and 44 of your complaint that the universe of people who were taken into custody pursuant to the investigative detention policy include all people who appear on the log, even without any ID reference, who were not charged, were released without charges. So no other indication as to their they were released without charges. And you allege that group of people falls within the investigatory detention policy. When you say 10 percent, are you including that group that is all of the N.A.s on the log? Your Honor, it's not just N.A.s. It's ID, invest attention, two-hour. There's different notations in there. There seems to be no standard. Do you require all of those notations to appear for someone to be designated as detained pursuant to the policy or any one of including N.A. standing alone? Any one of them is what we're alleging, Your Honor. And it's not just no charges. It's that there's no bail either. So there's nothing done to these people like everybody else that's charged with being the most minor crime. So any of these entries with either nothing being there, ID, two-hour, no charges, no bail, the disposition is they're just simply released, as according to their policy. You identify it as related to the policy, but as your colleague pointed out on the other side of the aisle, aren't there numerous reasons that someone might be arrested on the basis of probable cause and released without charges? Well, Your Honor, I'm not sure why an informant would be locked up. I mean, these are lockup logs, people that have been locked up in jail. There's lots of different reasons. KPIS is one of them. But even if there's no charges for KPIS, they're still in that two-hour period before there are various conversations with law enforcement or a DA and a determination made to put this person back out to work cases on the street, right? Your Honor, and once again, just like I did in Stinson, the court retains the administrative ability to look at these one in a million issues or one in a hundred issues to go ahead and take them out of the class. But in Stinson and the other cases you identified from the Second Circuit, there was at the threshold either an unconstitutional statute where you could clearly ascertain the class because you could see the charges that were brought, or there had been a threshold court determination as to factual insufficiency that, again, could be readily ascertained from the face of those orders. How do we have that here when you're suggesting that those arrested pursuant to a policy be gleaned from a log nearly based on the fact that someone was released without charges? Our own case, Velazquez, suggests that on the basis of this statute, someone can be arrested with probable cause. And the police might think it's reasonable suspicion, but the probable cause determination is a legal one that requires looking back and doing an individual assessment. How could you do that on the basis of what appears on a log? Well, Your Honor, I think what the log says is basically there's not even enough to get to a court determination. The police officer himself is saying we don't have probable cause here. And they wouldn't have probable cause otherwise they would have listed a crime, because the crime is supported by probable cause. But in Velazquez, we had exactly that case, and we said the police officer was incorrect. There was probable cause. Once again, when there are assertions, you know, we also have incident reports to show, you know, whether there was any probable cause to take people in. There are abilities and devices that the court has at their disposal to make this determination when somebody, something really is by probable cause. But I think, Your Honor, the fact that it says invest attention, two hour, you know, that is very persuasive that the reason these people were taken in is pursuant to this policy. And I mean, tie that to a document. But what you've argued to us today and in your briefing, that is not the way you've limited the class, even in the amended definition, correct? I misunderstood that, Your Honor. I didn't understand the question. The way that you have suggested that the amended definition should be interpreted is not simply those where there is a reference to invest, detain, or ID, or two hour policy. You suggested that everyone who appears on the log and who was released without charges could also be considered arrested pursuant to the investigatory detention policy. Until very recently, Your Honor, we didn't have the log that says invest attention, two hour, where we know they're being brought in under this policy. We had one day sample. And on that one day sample, we had one thing that said ID, no charges, no bail. We had resist arrest with no, you know, that was the only charge that was there. But is your position that the class definition in the second class includes all persons who were arrested and released without charges, regardless of whether there appears ID, invest, detain, or reference to two hours? That the proposal, I believe there's enough for a class based on numerosity, based just on invest detention. You believe? But I believe that if there's nothing there, and the people are released, and there's no bail, those are exactly identical to the invest detention and the two hour, that yes, they would also qualify under this policy. Because there's no, it seems like there's no protocol for listing investigatory attentions. So you wouldn't consider any of the circumstances underlying the ID category? Well, I think you could. But how would you if it's not listed? Well, if there's nothing there, I mean, I think, you know, it's just, it doesn't make sense. It sounds like from what I'm hearing that just the entry of ID is sufficient to put somebody into the class. Well, I think it is because they admit that they have this policy. We have sworn testimony from their sworn opponent, which I can cite to. And from what you've said, the absence of anything referencing ID and a mere NA, with no other notation, merely NA, that is released without charges, in your view, would constitute an arrest based on the investigatory detention policy under the second definition? Well, it's not necessary. There's enough invest detention ID that you can go off of that alone. But we would... Do you consider, is it not part of the class definition? I believe, Your Honor, it would be because there's no charges, no, you know, I believe it would be. So I guess what you're saying is ID in and of itself is unconstitutional. That is, investigatory stops regardless of the circumstances. No, that's not what I'm saying. I'm saying according to the policy of Wilmington Police Department, the written policy, and then their de facto investigatory detention policy, what they're saying that they do, they don't have probable cause, they only have reasonable suspicion, then they handcuff, then they throw them in the police car. You're then going into the circumstances. I mean, investigatory detention in and of itself is not unconstitutional. Well, it really depends on how it's defined. And the way Wilmington defines it is that investigatory detention in and of itself has all these factors in it. Transport, handcuffing, just like the Glass case from the Eastern District of Pennsylvania, where they determined and they determined that investigatory detention is unlawful. I mean, it was very, very similar. When you take somebody off the street under investigatory detention, you bring them to the jail. Again, for my benefit, what is the definition of ID by the Wilmington Police Department? The way they explain it is that investigatory detention means that you don't have probable cause. You're investigating a crime and you have reasonable suspicion. This is under the I do not have probable cause to arrest you, but I suspect that you're up to no good. I can take you into custody. Well, reasonable suspicion allows you to pat them down, but Wilmington takes it a step further and actually believes that they can take you into custody, lock you up, handcuff you as long as you're released within two hours. And that is their express testimony supported by their written policy called the two-hour arrest statute. And I want to get back to Lyons, Your Honor, because I do think this is a very different case. I think we're at the end of our time. We are. Great, Your Honor. Thank you. Thank you for the honor of coming before me. We thank counsel for their arguments and take the case under advisement.